ORTA, PLAINTIFF AND APPELLANT, *v.* ARZUAGA ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 2, in an. Action of Filiation.

No. 1262.—Decided November 30, 1915.

PRESCRIPTION—DEMURRER—PLEADING.—When the demurrer specifies the section of the code relied upon to support the plea of prescription and that section. is not the one applicable to the case but a different one is, the demurrer cannot be sustained under the latter section, because the plaintiff had no opportunity to defend himself against a question not properly raised.

ID.—DEMURRER—PLEADING.—When, as in this case, although the section of the code on which the plea of prescription is based is not specified, the demurrer contains sufficient data to raise the legal question and it is shown that it was well understood by the lower court as well as by this court and by the plaintiff and appellant, the question of prescription involved can and should be passed upon.

ID.—ACTION OF FILIATION—CONSTRUCTION OF LAW—CONSTITUTIONAL LAW.—According to the law in force prior to the adoption of the Revised Civil Code, or the Civil Code of 1889, a natural child could bring an action of filiation during the life of his father (article 137 of the former Civil Code, and pursuant to the Revised Civil Code of 1902, section 199) only within two years after having become of age, or in case of his being of age in 1902, only two years after the code went into effect; which interpretation is necessary in order that section 199 of the Revised Civil Code may be deemed constitutional.

CONSTRUCTION OF LAW—VESTED RIGHTS—RETROACTIVE EFFECT OF STATUTES.—It is a principle sanctioned by section 3 of the Revised Civil Code that laws shall have no retroactive effect unless it is expressly so provided therein, and that. in no case shall a retroactive effect of a statute prejudice rights acquired. under the protection of prior legislation. Hence, as no retroactive effect was given to the Act of March 9, 1911, it cannot be applied to revive rights already extinguished under prior legislation; and in no case could a retroactive effect of a statute affect rights acquired under article. 137 of the former Civil. Code and under section 199 of the Revised Civil Code.

ACTION OF FILIATION—CONSTRUCTION OF LAW—PRESCRIPTION.—The Act of 1911 was not limited to reviving the law in force prior to 1902. The difference between them is fundamental. Under the old Civil Code, as a general rule; an action of filiation could be brought only during the life of the putative

father, and Act No. 73 of 1911 extended that time to one year after the death of the father. Under the old Civil Code, the alleged father could always answer and deny the paternity attributed to him. Under the Act of 1911, the action need not be brought until after the death of the alleged father and acts may be imputed to him whose certitude the heirs frequently find it very difficult to verify.

The facts are stated in the opinion.

*Messrs. J. H. Brown* and *Henry G. Molina* for the appellant.

*Mr. Eduardo Acuña Aybar* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action of filiation. On March 20, 1912, Lorenzo Orta filed a complaint in the District Court of San Juan, Section 2, alleging that about the year 1874 Ignacio Arzuaga and Jacinta Orta, who were both unmarried, residents of Porto Rico and without impediment to contract marriage, sustained amorous relations for an uninterrupted period of approximately five years and that as a result thereof the plaintiff was born in the said year of 1874. The plaintiff further alleged that from the time he was born his father, Ignacio Arzuaga, considered him and treated him as his natural child by supporting him and referring to him as his son in conversations with his relatives and friends as well as with strangers; that such relations existed between father and son until the death of the former, which occurred on March 20, 1911; that his said father died leaving a will dated May 24, 1895, in which he designated his heirs, omitting the plaintiff; that a part of his father's estate, consisting mostly of real property, is situated in the municipal districts of Carolina and Loíza, and that the defendants, who are the heirs named by Arzuaga in his will, refuse to acknowledge the plaintiff as the natural child of Arzuaga and oppose his using his father's surname and entering into possession of the property constituting his inheritance.

The defendants demurred to the complaint as follows:

"They demur to the complaint in this action on the ground that it does not state facts sufficient to constitute a cause of action, because the action of filiation has prescribed pursuant to the provisions of the Revised Civil Code of this island, as enacted originally and as amended by the Legislative Assembly on March 9, 1911."

On November 6, 1914, the district court rendered judgment holding that the plaintiff's action had prescribed, whereupon the plaintiff took the present appeal which was heard on June 25, 1915, attorneys for both parties being present and submitting arguments.

The first question which we should consider is whether prescription was pleaded according to law.

In the judgment appealed from it is held that the action brought by the plaintiff has prescribed. If the trial court is correct in its conclusion, it must have based the same on section 199 of the Revised Civil Code which was expressly repealed by section 4 of Act No. 73 of 1911. And the appellant maintains in his brief that if that is the basis of the judgment "it was not raised by the demurrer, which was based only on section 194 of the Civil Code."

In construing section 128 of the Code of Civil Procedure in the light of the jurisprudence of California in the case of *Lamb & Co.* v. *Fantauzzi Hermanos,* 17 P. R. R. 291, this court said:

"But where the demurrer has specified, as in the present case, the section of the law which sustains the plea that the action is barred by limitation, and such section is not the one applicable thereto, but a different one, it would not be fair, in such conditions, to maintain the demurrer under that other section, because the question was not raised in accordance therewith, and the plaintiffs had had no opportunity to defend themselves in an unannounced controversy, in which case the demurrer must be overruled. *Bank* v. *Wickersham,* 99 Cal. 655."

Although in this case section 199 was not specified by its number and section 194 was cited, it is a fact that the citation was made in the manner transcribed, and it is also true that

in the Civil Code, as amended by Act No. 73 of 1911, section 194 superseded section 199, which was repealed by the said act. Moreover, the plaintiff had an opportunity to defend himself. His brief reveals a careful and profound study of the exact question under consideration and in his argument he asked the court not to fail to consider and decide the question of prescription involved, even though it should decide that prescription had not been pleaded according to law and for that reason should reverse the judgment appealed from.

Although in our opinion the section of the law on which the plea of prescription was based should have been specified more clearly, the demurrer stated sufficient data to raise the legal question and it was well understood by the adverse party, the plaintiff-appellant, and by the court. In these circumstances we think that we should disregard the question raised as to form and consider the appeal on its merits, that is, that we are called upon to decide whether the action brought by the plaintiff had or had not prescribed when the complaint was filed.

The question is not a new one. It has been decided by this court in various cases. But the appellant maintains that now we should reverse ourselves, considering the jurisprudence which he cites and the argument adduced in his brief.

In his complaint the plaintiff alleges that he was born in 1874. According to the law in force prior to the enactment of the Revised Civil Code, or the Civil Code of 1889, the plaintiff could have brought his action of filiation during the life of his father (article 137 of the former Civil Code) and pursuant to the Revised Civil Code of 1902 (section 199) only within two years after having become of age, or in case of his being of age in 1902, only within two years after the code went into effect, which interpretation is necessary in order that section 199 of the Revised Civil Code may be deemed constitutional. The complaint was filed on March 20, 1912, or after the death of the alleged father of the plaintiff and

after more than two years had elapsed, counting either from the date on which the plaintiff attained his majority or from the time the Revised Civil Code went into effect.

But the plaintiff contends that in the year 1911 the Legislature amended section 194 of the Revised Civil Code so as to make it provide that "actions for the acknowledgment of natural children can be brought only during the life of the presumptive parents or one year after their death," except in the cases specified by the same act, and that in accordance with the said provision his action has revived and cannot be regarded in any manner as having prescribed, inasmuch as the complaint was filed within one year after the death of the father of the plaintiff.

The very question raised by the appellant was decided by this court in the cases of *Jesús* v. *Succession of Pérez Villamil,* 18 P. R. R. 392; *Osorio* v. *Succession of Pérez,* 18 P. R. R. 896; and *Robles* v. *Succession of Pérez,* 18 P. R. R. 894. The reasoning of the court in the first of said cases was as follows:

"Isabel de Jesús vainly invokes in her favor Act No. 73, approved March 9, 1911, by the provisions of which actions for acknowledgment of natural children can be brought during the life of the parents as well as within one year after their death.

"That law is not applicable to the case at bar, because when the same went into effect the present action of filiation had already expired, in accordance with section 199 of the Revised Civil Code, and the former law cannot revive a right that is already dead.

"It is a principle sustained by section 3 of the Revised Civil Code that laws shall not have a retroactive effect unless the *contrary* (same) is expressly provided therein, and in no case shall a retroactive effect of the law prejudice rights acquired under the protection of prior legislation. From this principle it may be inferred that no retroactive effect having been given to the law of March 9, 1911, by its own provisions, it cannot have that effect, and that in no case could that retroactive effect affect the vested rights accrued to Ramón Pérez Villamil and his estate under section 199 of the Revised Civil Code." *Jesús* v. *Succession of Pérez Villamil,* 18 P. R. R. 392.

The appellant maintains, however, that the jurisprudence of this court is contrary to that established by the Supreme Court of the United States in the case of *Campbell* v. *Holt,* 115 U. S. 620, and asks that we apply the doctrine laid down by the highest court of the nation and revoke the principles on which we based our decisions in the cases cited. We have considered carefully the case of *Campbell* v. *Holt, supra,* and are of the opinion that applying its doctrine to this case now under consideration would not lead to a reversal of the judgment appealed from. Rather does it contain arguments in affirmation of the said judgment.

The said case originated in Texas. Malvina Stamps, afterwards Holt, inherited from her mother an interest in lands and some slaves. Malvina's father sold her interest in the lands and hired out the slaves, appropriating all the proceeds to his own use. Malvina sued for the amount due to her as such proceeds. The defendant pleaded that the plaintiff's action had prescribed.

The Texas legislature, which had passed several acts suspending the operation of the statutes of limitation during the Civil War, revived them in 1866. At that time Malvina was of age and under the statutes of limitation again put in force it would have been necessary to conclude that the time fixed therein had elapsed before the suit was brought by Malvina and therefore that her action was barred. But in 1869 the State of Texas adopted a new constitution which, in article 12, section 43, provided as follows: ''The statutes of limitations of civil suits were suspended by the so-called act of secession of the 28th of January, 1861, and shall be considered as suspended within this State, until the acceptance of this Constitution by the United States Congress.''

The case finally reached the Supreme Court of the United States which held that the defendant could not plead in bar of the plaintiff's action any vested right acquired under the Act of 1866 and, consequently, that the provision of the con-

stitution of 1869 was applicable and the action of the plaintiff had not prescribed. The doctrine laid down by the Supreme Court of the United States is summarized in the syllabus as follows:

"The repeal of a statute of limitation of actions on personal debts does not, as applied to a debtor, the right of action against whom is already barred, deprive him of his property in violation of the Fourteenth Amendment of the Constitution of the United States."

The opinion was rendered by a majority of the court, Justices Bradley and Harlan dissenting, and it was pointed out plainly therein that it was not a suit to recover the possession of real or personal property, but to recover for the violation of an implied contract to pay money. "The distinction is clear," said the court, "and, in the view we take of the case, important."

The following was also said in the opinion:

"We are aware that there are to be found, in the opinions of courts of the States of the Union, expressions of the idea that the lapse of time required to bar the action extinguishes the right, and that this is the principle on which the statutes of limitation of actions rest.

"But it will be found that many of these are in cases where the suits are for the recovery of specific real or personal property, and where the proposition was true, because the right of the plaintiff in the property was extinguished and had become vested in the defendant. In others, the constitution of the State forbade retrospective legislation."

It follows, then, in the first place, that in the Texas case the constitution of 1869 expressly provided that the statute of limitation of the State should be considered as suspended until the acceptance of the constitution by the United States Congress, and in the Porto Rico case the Act of 1911 makes no express provision with regard to its retroactive effect as to rights already extinguished in accordance with the prior legislation, and in this island "Laws shall not have a retroactive effect unless they expressly so decree. In no case

shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislation.'' Section 3, Civil Code.

In the second place, the action of filiation is distinct from that which gave rise to the case of *Campbell* v. *Holt*. The peculiar nature of an action of filiation was clearly stated by this court in the case of *Gual et al.* v. *Bonafoux et al.*, 15 P. R. R. 545. In delivering the opinion of the court Mr. Chief Justice Hernández said:

''Nay, more'; without taking into account what has already been urged to show that the action for acknowledgment has prescribed because the time allowed by the law applicable to the case had expired, it appears to us that article 1973 of the Spanish Civil Code, which is section 1874 of the Revised Code, is not pertinent to the exceptional case of prescription under consideration, inasmuch as article 1938 of the former Civil Code, which corresponds to section 1839 of the Revised Civil Code, prescribes that the provisions of Title XVIII of both Codes, referring to prescription, shall be understood without prejudice to what may be established in either Code with regard to specified cases of prescription.

''The case of prescription under consideration is special and one of such a nature as to preclude interruption, for, if the action for acknowledgment of natural children must be prosecuted only within the time fixed in article 137 of the Spanish Civil Code applicable to the case, it is evident that the action disappears and extinguishes, after the lapse of the time allowed for its prosecution.

''In fixing a certain and definite time for the exercise of the action for acknowledgment, it would seem that it was the purpose of said Code to avoid uncertainty and threat which might disturb the peace and tranquillity of families.''

And, finally, even if it were concluded that this case could not be distinguished from that of *Campbell* v. *Holt* and, on the theory that the Act of 1911 could be given the retroactive effect indicated, applying the doctrine laid down by the Supreme Court of the United States, we should still be constrained to hold that the defendants had a vested right acquired within the meaning of that jurisprudence, inasmuch

as in substance every action of filiation generally involves the recovery, immediate or remote, of some property, which fact is even more evident in this particular case where the plaintiff-appellant alleges in his complaint, as stated at the beginning of this opinion, that a part of his father's estate, consisting mostly of real property, is situated in the municipal districts of Carolina and Loíza, and that the defendants, who are the heirs named by Arzuaga in his will, refuse to acknowledge the plaintiff as the natural child of Arzuaga and oppose his using his father's surname or entering into possession of the property which constitutes his inheritance.

The Supreme Court, in the said case of *Campbell* v. *Holt, supra,* also said:

"It may, therefore, very well be held that, in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff, would be to deprive him of his property without due process of law.

"But we are of the opinion that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on a very different ground."

It has been said that the Act of 1911 only served to revive the law in force prior to 1902, but this is not so. According to the old Civil Code, as a general rule an action of filiation could be brought only during the life of the alleged father. According to the amendment of 1911, that time was extended to one year after the death of the father. The difference is fundamental. Under the old Civil Code the alleged father could always answer and deny the paternity attributed to him. Under the Act of 1911, the action need not be brought until after the death of the alleged father and acts may be

imputed to him the certitude of which the heirs frequently find it very difficult to verify.

The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison dissented.